Eastern District of Kentucky
FILED
APR 0 5 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-243-GWU

WILLIAM HOLLIDAY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

**INTRODUCTION**

The plaintiff originally brought Holliday v. Barnhart, London Civil Action No. 02-539 (E.D. Ky.), to seek judicial review of a negative administrative decision on his application for Disability Insurance Benefits (DIB). (Tr. 18-25). After a remand (Tr. 248-59), another negative administrative decision was issued (Tr. 234-40), and the above-styled appeal followed. It is now before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The focus of the Court's concern upon its first review of this appeal was that the functional capacity opinions given by the plaintiff's treating physicians had not been given proper weight. The Court noted that the state agency reviewing sources upon whom the ALJ relied did not have access to the entire record, and did not discuss contrary opinions from treating and examining sources. (Tr. 257).

On remand, the ALJ sought additional evidence from a consultative medical examiner, Dr. Mark Burns, and received additional office notes from the plaintiff's treating family physician, Dr. John F. Gilbert, who continued to indicate that he felt that the plaintiff was disabled. (Tr. 286-303). For his part, Dr. Burns conducted a physical examination of the plaintiff, and apparently took an oral medical history, but there is no indication that he actually reviewed prior records, and he did not discuss any physical findings or functional capacity conclusions by other sources. (Tr. 276-83). His physical examination was not accompanied by any new objective testing, such as x-rays. Therefore, while his opinion may be useful as a "snapshot" of the plaintiff's condition on the day of the examination, it does not address the issue of

longitudinal treatment or of complete review of the medical evidence that prompted the remand.[1]

It remains the case that the treating sources, as well as several of the one-time examiners such as Dr. Hughes Helm (Tr. 125-6) and Dr. Robert Brandon (Tr. 198-208), indicated greater restrictions than found by the ALJ. The additional evidence submitted on remand by Dr. Gilbert, one of the two treating sources to suggest far greater restrictions than the ALJ accepted, did not list any specific functional restrictions, but he continued to repeatedly state that he considered the patient "disabled." (Tr. 286-302).[2] Therefore, nothing essentially has changed since the Court's prior decision. The medical sources with a record of longitudinal treatment of the plaintiff found greater restrictions than the ALJ, and the sources which indicate fewer or no restrictions have not examined all of the medical evidence and provided a rationale for their difference of opinion. Consequently, substantial evidence to support the ALJ's residual functional capacity determination is lacking.

---

[1]Moreover, Dr. Burns' report is somewhat unpersuasive, in that he indicated that the plaintiff had a reduced range of motion of the lumbar spine and a straight leg raising test that was positive bilaterally at 45 degrees in both the seated and supine physicians, as well as "pain throughout the entire examination" (Tr. 277-9), yet found no evidence for any functional restrictions at all (Tr. 280-3).

[2]While the Commissioner avers at some length in her brief that a physician's statement of "disability" is not binding, the real issue is the actual functional restrictions given by Dr. Gilbert. The fact that the physician continued to refer to disability in the more recent office notes is, at the very least, an indication that the physician is unlikely to have changed his prior restrictions.

The Court had also noted in its prior opinion that vocational expert (VE) testimony had indicated that the plaintiff had the acquired skills as a route driver that would transfer to sedentary cashier positions, if the functional restrictions given by the plaintiff's treating neurologist, Dr. James Bean, were accepted. (Tr. 47-8). However, no numbers were cited for this job. (Tr. 256-7). As the Sixth Circuit has held, "It is not enough...that the claimant possess transferable skills; their transfer must require *little if any* vocational adjustment." Burton v. Secretary of Health and Human Services, 893 F.2d 821, 824 (6th Cir. 1990). The ALJ took no additional vocational testimony on the issue of vocational adjustment. As a result, the Commissioner has not carried her burden of showing that there are alternative jobs the plaintiff can perform.

The Court concludes, under the particular circumstances of this case, that no useful purpose would be served by remanding the case on the same grounds. Accordingly, an order will issue awarding benefits to the plaintiff as of August 8, 2000, the date Dr. Gilbert indicated his functional restrictions would first apply. (Tr. 169).

This the 5 day of April, 2006.

G. Wix Unthank

G. WIX UNTHANK
SENIOR JUDGE